FILED

2023 Jun-13  PM 04:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

**DONNA R. EMBRY,**
　　　Plaintiff,

**v.**

**CARRINGTON MORTGAGE
SERVICES, LLC, et al.,**
　　　Defendants.

Case No. 1:22-cv-7-CLM

## MEMORANDUM OPINION

Plaintiff Donna R. Embry ("Embry") filed this lawsuit to stop the foreclosure sale of the property she lived in. Carrington Mortgage Services, LLC ("Carrington") and Wilmington Savings Fund Society, FBS as Trustee for Quercus Mortgage Investment Trust ("Wilmington") (collectively "Defendants") moved for summary judgment on all counts against them. Wilmington also moved for summary judgment on its counterclaims for declaratory judgment, breach of contract, and judicial foreclosure. For the reasons explained below, the court will **GRANT** Defendants' motion for summary judgment on all counts against them, and **GRANT** Wilmington's motion for summary judgment on its counterclaims (doc. 56). The court will also **GRANT** Defendants' motion to strike (doc. 82).

## I.  BACKGROUND

Below are the facts in the light most favorable to Embry.[1]

---

[1] This court's Initial Order requires the non-moving party, in its response to a motion for summary judgment, to list in separately numbered paragraphs any disputes it has with the moving party's statement of undisputed facts. (*See* Doc. 12, p. 23). The Initial Order states that "[a]ll material facts set forth in the statement required of the moving party *will be deemed admitted for summary judgment purposes* unless controverted by the response of the party opposing summary judgment." (Doc. 12, pp. 23–24) (emphasis added). Embry did not dispute any of Carrington's undisputed facts. However, the court has reviewed all of Embry's submissions, and will not assume any undisputed facts to be admitted if her evidence contradicts them.

1. <u>The property</u>: On March 12, 2007, Embry borrowed $182,100 from Taylor Mortgage, Inc. ("Taylor") to purchase real property located at 266 Maple Leaf Drive, Lincoln, Alabama 35096 ("the Property"). As security for the loan, Embry also granted Taylor a mortgage on the Property. Embry's note and mortgage were subsequently transferred and assigned to Wilmington. Wilmington's records custodian has maintained physical possession of Embry's note for Wilmington's benefit since the day Wilmington acquired the loan from J.P. Morgan Chase Bank, N.A. ("Chase").

Embry defaulted on her mortgage loan no later than April 1, 2018. No payment has been made on Embry's account since August 7, 2019, and her loan is due for its September 1, 2018 payment.

2. <u>Bankruptcy</u>: On February 16, 2010, Embry filed for Chapter 13 bankruptcy protection. She received a discharge on July 17, 2015. At the time of this bankruptcy proceeding, Chase was servicing Embry's mortgage loan. Embry claims that Chase improperly added 8 payments to her account balance in August 2015.

Embry filed another Chamber 13 bankruptcy petition on January 7, 2019. Her plan was confirmed on June 14, 2019. Pursuant to Embry's plan, the Trustee was to make payments on her mortgage loan beginning in February 2019.

On September 25, 2019, the Bankruptcy Trustee filed a Motion to Dismiss Case for Failure to Make Payment Plans. According to the Trustee's Final Report And Account, Embry had not paid under the plan for six months. The bankruptcy court granted the Trustee's Motion to Dismiss on November 15, 2019.

3. <u>Carrington</u>: Carrington began servicing Embry's mortgage loan for Wilmington on November 18, 2019. Embry acknowledges that Carrington's role is that of servicer, not mortgagor.

Embry alleges that she has met her obligations under the note and mortgage, but testified that she did not know if any payments had been made on her mortgage loan since Carrington began servicing it in November 2019. According to Embry, any payments that might have been made to Carrington would have been made by the Bankruptcy Trustee before her 2019 bankruptcy

was dismissed in November 2019. Embry also testified that she has not personally attempted to make any payment to Carrington.

According to the Trustee's Final Report and Account, Embry made her last payment to the Trustee around March 2019, before Carrington started servicing her loan. Neither Carrington nor Wilmington has received a payment on Embry's mortgage loan since August 7, 2019.

4. <u>Foreclosure</u>: Embry's prior servicer, Chase, gave her notice of default, an acceleration warning, and notice of intent to foreclose on June 19, 2018.

Wilmington gave Embry notice of acceleration and intent to foreclose on August 16, 2021. Wilmington then published its notice of intent in *The Daily Home* (a newspaper) on August 21, 2021, August 28, 2021, and September 4, 2021. Wilmington scheduled a foreclosure to take place on October 1, 2021, which was later continued to December 7, 2021.[2] Embry claimed that the attempted foreclosure sale was wrongful and invalid.

5. <u>Litigation</u>: On December 6, 2021, Embry filed a complaint in state court against Carrington, Wilmington, and JP Morgan Chase Bank. The foreclosure sale was canceled after Embry filed this lawsuit. Carrington and Wilmington removed the case to this court on January 4, 2022. (*See* Doc. 1).

The operative complaint includes 13 counts. (*See* Doc. 28). Embry alleges: (1) unjust enrichment against Wilmington; (2) unjust enrichment against Carrington; (3) breach of contract against Wilmington; (4) breach of contract against Carrington; (5) breach of contract against Chase; (6) defamation, libel, and slander against Wilmington; (7) defamation, libel, and slander against Carrington; (8) violations of the Truth in Lending Act (TILA) against Carrington; (9) violations of the Real Estate Settlement Procedures Act (RESPA) against Carrington; (10) violations of the Fair Credit Reporting Act against Chase; (11) violations of the Fair Credit Reporting Act against Carrington; (12) violations of the Fair Debt Collection Practices Act against Carrington; and (13) a claim for declaratory relief.

---

[2] Embry asserts that foreclosure sales were also set for February 20, 2022, April 15, 2020, November 2, 2021, and February 15, 2022. But she cites no evidence for this proposition, and it is unclear where these dates come from (it is also most likely irrelevant).

Wilmington asserted counterclaims for declaratory judgment, breach of contract, and judicial foreclosure. (Doc. 36).

Chase was dismissed from the lawsuit on June 7, 2022, due to a *pro tanto* settlement that Embry reached with Chase. (*See* Doc. 47). So Counts 5 and 10 are no longer part of the case. Throughout this opinion, "Defendants" means Carrington and Wilmington.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323.

# III.   DISCUSSION

## A. Motion to Strike

Embry filed an affidavit with her response in opposition to the motion for summary judgment. (*See* Doc. 79). Perceiving inconsistencies between Embry's affidavit and her prior deposition testimony, Defendants ask the court to exclude Embry's declaration as a "sham affidavit." (*See* Doc. 82).

"The Eleventh Circuit, in limited circumstances, allows a court to disregard an affidavit as a matter of law when, without explanation, it flatly contradicts his or her own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v Mail Centers Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016) (citing *Tippens v. Celotex*, 805 F.2d 949, 953–54 (11th Cir. 1986); *Van T. Junkins & Assocs. V. U.S. Indus.*, 736 F.2d 656 (11th Cir. 1984)). This rule is called the "sham affidavit" rule. *See Furcron*, 843 F.3d at 1307.

"When a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.3d 656, 657 (11th Cir. 1984). But the Eleventh Circuit has clarified that courts "may *only* disregard an affidavit that 'contradicts, *without explanation*, previously given clear testimony." *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986) (quoting *Van T. Junkins*, 736 F.2d at 657); *see also Tippens v. Celotex Corp.*, 805 F.2d 949, 955 (11th Cir. 1986) (Hill, J., specially concurring) ("The *Lane* decision drastically limits this court's holding in [*Van T. Junkins*]."). Thus, the *Van T. Junkins* "rule is applied 'sparingly because of the harsh effect it may have on a party's case.'" *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987).

For the rule to apply, the affidavit must be "inherently inconsistent" with the affiant's deposition testimony. *Van T. Junkins*, 736 F.3d at 658. A statement in an affidavit that is merely at odds with earlier deposition testimony is not grounds for exclusion. *Tippens v. Celotex Corp.,* 805 F.2d 949, 954 (11th Cir. 1986).

Embry's affidavit states that Carrington ". . . failed and refused to apply Embry's monthly payments properly, failed to accept the proper payments . . ." (Doc. 79, p. 2). This statement is directly at odds with Embry's deposition testimony that she never attempted to make a payment to Carrington or Wilmington during Carrington's tenure as servicer. (Doc. 67, pp. 13–15). Because the undisputed evidence shows that Embry never made a payment, there was nothing for Carrington or Wilmington to fail or refuse to apply or accept. So the court will **STRIKE** this portion of Embry's affidavit.

Embry's affidavit also states:

> I have not received any statements related to my account since 2020. Occasionally, my attorney receives some statement or notice on my behalf, but it is very irregular. I have never authorized Carrington to send my statement or any other notice to anyone other than me at the property address.

(Doc. 79, p. 9). This statement directly contradicts Embry's deposition testimony. At her deposition, Embry reviewed monthly statements that Carrington sent Embry and her attorney. (Doc. 67, p. 22). Embry confirmed that each of these statements was properly addressed. (*Id.* at pp. 16–25). Embry testified that she may have asked Carrington to send statements to her attorney. (*Id.* at p. 22). She also testified that she had no problem with her attorney receiving her statements. (*Id.*). Because this portion of Embry's affidavit contradicts her deposition testimony (with no explanation), the court will **STRIKE** this portion of Embry's affidavit.

## B. Unjust Enrichment (Counts 1 and 2)

In Count 1, Embry alleges that by charging Embry fees and expenses which were not permitted, Wilmington was unjustly enriched. Count 2 alleges the same claim against Carrington.

"'The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another.'" *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1123 (Ala. 2003) (quoting *Battles v. Atchison*, 545 So. 2d 814, 815 (Ala. Civ. App. 1989)).

"'To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation.'" *Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (citation omitted). The Alabama Supreme Court has also explained that "[r]etention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched." *Id.* at 146 (quoting *Jordan v. Mitchell*, 705 Sp. 2d 453, 458 (Ala. Civ. App. 1997)).

The doctrine of unjust enrichment generally does not apply when there is a contract between the parties governing the same subject matter. *Jackson v. Bank of New York Mellon*, 2016 WL 4942085, at *5 (S.D. Ala. July 19, 2016) (citing *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So.3d 443, 447 (Ala. 1996)); *see also Selman v. CitiMortgage, Inc.*, 2013 WL 838193, at *13 (S.D. Ala. Mar. 5, 2013) ("under Alabama law . . . express written agreements concerning the same subject matter as the implicit contract underlying the . . . unjust enrichment cause of action are fatal to that cause of action, as a matter of law").

Applying these principles, federal courts in Alabama have held that a borrower's unjust enrichment claim against a mortgagee (or its servicer) fails if it is based on the servicer's collection of payments and fees under a promissory note and mortgage. *See, e.g.*, *Jackson v. Bank of New York Mellon*, 2016 WL 4942085, at *5 (S.D. Ala. July 19, 2016); *Federal Home Loan Mortg. Corp. v. Anchrum*, 2015 WL 2452775, at *6 (N.D. Ala. May 22, 2015); *Rice v.JPMorgan Case Bank NC*, 2014 WL 3889472, at *11 (N.D. Ala. Aug. 5, 2014) (citing *Kennedy v. Polar-BEK & Baker Wildwood P'ship*,682 So. 2d 443, 447 (Ala. 1996)).

Here, the relationship between Embry and the Defendants, as it relates to the loan of $182,100 for Embry's purchase of the Property, is governed by a contract—*i.e.*, the promissory note. (*See* Doc. 57, p. 10). The note specifies the

terms of the parties' agreement, as well as the terms that apply if the borrower (Embry) fails to pay as required. (*See* Doc. 57, p. 11). Because a contract governs the same subject matter as the implicit contract underlying the unjust enrichment causes of action, the doctrine of unjust enrichment is inapplicable. On that ground alone, the court concludes that the Carrington and Wilmington are entitled to summary judgment on Counts 1 and 2.

And there are other problems with Embry's claims. For example, with respect to Wilmington, Embry has not produced substantial evidence that Wilmington received a benefit from her that is not consistent with her note and mortgage. Embry acknowledged in her deposition that her lender is entitled to impose fees, costs, and expenses to her loan in the event of default. (*See* Doc. 67, pp. 6–7). The undisputed facts confirm that Embry's loan is in default because a payment has not been made on her mortgage loan in three years. Embry has not produced any evidence (or made any argument) that any of the fees, costs, and expenses imposed on her loan are inconsistent with her note or her mortgage. This further confirms that Wilmington is entitled to summary judgment on Count 1.

And a fundamental problem with Embry's claim against Carrington is that Carrington has not received *any* payment from Embry since it began servicing her loan in November 2019. (*See* Doc. 67, pp. 14–15). Carrington cannot be unjustly enriched when it has not received, accepted, or retained a benefit from Embry. This further confirms that Carrington is entitled to summary judgment on Count 2.

Lastly, Embry did not respond to any of Defendants' arguments related to Counts 1 and 2. Generally, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (citation omitted); *see also Rice v. JPMorgan Chase Bank NA*, 2014 WL 3889472, at *11 (N.D. Ala. Aug. 5, 2014) ("Rice does not mention the unjust enrichment claim in his brief opposing the motion to dismiss, and thus he has abandoned it.").

For these reasons, the court will **GRANT** the motion for summary judgment on Embry's unjust enrichment claims (Counts 1 and 2).

## C. Breach of Contract (Counts 3 and 4)

Counts 3 and 4 allege breach of contract claims against Wilmington and Carrington, respectively. The relevant contracts are Embry's note and mortgage agreements. Embry alleges that the Defendants breached certain terms of those agreements.

The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's non-performance; and (4) resulting damages. *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (citing *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)).

### 1. Breach of Contract against Wilmington (Count 3)

In Count 3, Embry alleges that Wilmington breached the agreement by failing to comply with essential terms of Paragraph 2 of the mortgage agreement. Paragraph 2 addresses application of payment and notice requirements. (*See* Doc. 28-1, p. 4).

As explained above, to survive summary judgment on a breach-of-contract claim, Embry must show that she performed under the contract. *Winkleblack v. Murphy*, 811 So. 2d 521, 529 (Ala. 2001) ("in order to establish that a defendant is liable for a breach of a bilateral contract, a plaintiff must establish that he has performed, or that he is ready, willing, and able to perform under the contract").

The undisputed evidence before this court, including Embry's own testimony, shows that Embry has failed to make payments for three years. (*See* Doc. 67, pp. 13–15). Failure to pay is a material breach of the contract. *See Sokol v. Bruno's, Inc.*, 527 So. 2d 1245, 1247–48 (Ala. 1988) ("A material breach [of a contract] is one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract.").

Embry has not performed under the contract. For that reason, Wilmington is entitled to summary judgment in its favor on Count 3.

### 2. *Breach of Contract against Carrington (Count 4)*

In Count 4, Embry asserts a breach of contract claim against Carrington. Embry's theory of liability is that Carrington acted as a servicer of the loan on behalf of Wilmington, and thus, Carrington acted as an agent for Wilmington.

The relevant contracts are Embry's mortgage and note, which predate Carrington's involvement with her loan. These contracts show that Carrington is not a party to Embry's note or mortgage, and thus, owes no contractual duty to Embry. *Stone v. JPMorgan Chase Bank, N.A.*, 786 F. App'x 212, 216 (11th Cir. 2019) ("Because Chase is not a party to the relevant contracts, Stone has failed to state a claim against Chase for breach of contract.").

Carrington cannot be liable for breaching Embry's contract simply because it was an agent acting for its principal. The Alabama Supreme Court has explained:

> A duty created by contract is one imposed upon *the party to the contract*, not directly upon the employee or agent of that party. If an employee or agent acting within the scope of his or her employment or agency acts in a manner that causes the principal to be in breach of the principal's contract, the breach is that of the principal itself, not of the employee, who is not a party to the contract.

*Indus. Dev. Bd. of City of Montgomery v. Russell*, 124 So. 3d 127, 138 (Ala. 2013). Carrington cannot be liable to Embry for any alleged breach of her note or mortgage because it is not a party to either of those contracts.

Thus, the court will **GRANT** summary judgment in favor of Carrington on Count 4.

## D. Defamation, Libel, Slander (Counts 6 and 7)

In Counts 6 and 7, Embry alleges defamation, libel, and slander against Wilmington and Carrington, respectively. Embry asserts that Defendants willfully, wantonly, recklessly, and/or maliciously published and communicated false and defamatory statements about her, which caused her harm. Embry specifies that the communications were "oral and/or written and

were printed in the newspaper and on the internet." (*See* Doc. 28, pp. 21–22). Embry does not identify specific statements that were allegedly defamatory, slanderous, or libelous, but her complaint suggests that (1) the foreclosure sale notices, which stated that Embry's loan was in default, and (2) reporting to credit reporting agencies that Embry had defaulted, form the basis of her claims. Embry's brief in opposition to the motion for summary judgment seems to confirm that these are the two allegedly false statements at issue. (*See* Doc. 80, p. 50).[3]

Under Alabama law, the elements of a cause of action for defamation are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting at least to negligence; and (4) either actionability of the statement irresponsive of special harm, or the existence of special harm caused by the publication of the statement. *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 3d 933, 840 (Ala. 2003) (citing *McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 877 (Ala. 1989)). Truth is an absolute defense to defamation. *Wal-Mart Stores, Inc.*, 872 So. 2d at 840 (citing *Foley v. State Farm Fire & Cas. Ins. Co.*, 491 So. 2d 934, 937 (Ala. 1986)).

---

[3] Embry states in her brief in opposition that she "was not asked to identify any, much less all, untrue statements made by the defendants." (Doc. 80, p. 51). But no one needs to "ask" a party to carry her burden on a Rule 56 motion. When a motion for summary judgment is filed, the moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex,* 477 U.S. at 323. That burden can be discharged if the moving party shows the court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the moving party has discharged its burden, *the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. Id.* at 324. These are the "familiar summary-judgment standards." *See Citizens Concerned About Our Children v. Sch. Bd. of Broward Cnty., Fla.*, 193 F.3d 1285, 1288 (11th Cir. 1999). And failure to carry one's burden can be fatal. *See Celotex*, 477 U.S. at 322 (stating that summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."). Embry needed to articulate the allegedly false statements that underly her defamation claims. The court will assume that the allegedly false statements at issue are the two that Embry raised in her brief.

The first problem for Embry is that nothing in the record supports her claim that Defendants made a "false" statement about her or her debt. Embry alleges that the defamatory statements are (1) the foreclosure sale notices, which stated that her loan was in default, and (2) Defendants' reports to credit reporting agencies that Embry was in default. In other words, the allegedly false statement, according to Embry, is that she was in default.

But the undisputed facts before this court confirm that Embry was in default because she failed to make payments on her loan for three years. (*See* Doc. 57, p. 4; Doc. 57, pp. 40–46; Doc, 67, pp. 13–15; Doc. 67, p. 53). Embry cites *no* evidence for the proposition that she was *not* in default.

Embry explains in her brief in opposition:

> It is clear from the amended complaint that the Plaintiff *alleges* that she was not in default in making her mortgage payments and that Defendant repeatedly published a notice in the newspaper which claimed that the Plaintiff was in default in making her mortgage payments and that Defendant was conducting a foreclosure sale as a result of Plaintiff's alleged default on the mortgage debt. Accordingly, Plaintiff has *alleged* a false statement which was published in a newspaper of general circulation. By publishing it in the Newspaper, it is obvious that the false statement was communicated by Defendant to third parties. *Accordingly, the Plaintiff has met all the elements of her claims for libel, slander, and defamation.*

(Doc. 80, pp. 49–50) (emphasis added).

In other words, Embry argues that because she has "alleged" a false statement, her claims should survive summary judgment. But this argument conflates the motion to dismiss standard with the summary judgment standard. To survive a motion for summary judgment, Embry must present evidence—not just allegations. *See Miles v. Celadon Group, Inc.*, 382 F.Supp.3d 1246, 1248 (N.D. Ala. 2019) (citing *Celotex*, 477 U.S. at 324). ("The nonmoving

party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."). Because nothing in the record shows or suggests that Defendants made a "false" statement about Embry, Defendants are entitled to summary judgment on Counts 6 and 7.

Moreover, the Fair Credit Reporting Act (FCRA) most likely preempts Embry's defamation, libel, and slander claims. *See* 15 U.S.C. § 1681t(b)(1)(F); *Riley v. General Motors Acceptance Corp.*, 226 F. Supp. 2d 1316, 1322 (S.D. Ala. 2002) ("It is clear from the face of section 1681t(b)(1)(F) that Congress wanted to eliminate all state causes of action 'relating to the responsibilities of persons who furnish information to consumer reporting agencies.' Any other interpretation would fly in the face of the plain meaning of the statute."); *McDonald v. Waterfall Victoria Mortg. Tr. 2011-1 REO, LLC*, 2017 LEXIS 136999, at *17 (S.D. Ala. July 5, 2017) (". . . to the extent they [plaintiff's state law claims for defamation, libel, and slander] are based on Waterfall's reporting of allegedly false information to credit agencies, they are preempted by the FCRA").

The court will **GRANT** Defendants' motion for summary judgment on Embry's claims for defamation, libel, and slander (Counts 6 and 7).

### E. TILA Claim (against Carrington only, Count 8)

In Count 8, Embry alleges that Carrington violated the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Federal Reserve Board Regulation Z, 12 C.F.R. § 226 (a regulation promulgated pursuant to TILA). Specifically, Embry alleges that Carrington failed to send proper monthly statements to Embry from November 2019 through February 2022, in violation of TILA.

TILA is a remedial consumer protection statute designed to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Under TILA, a consumer has a private right of action against "any creditor who fails to comply with any requirement imposed under this part . . ." 15 U.S.C. § 1604(a). But by its plain language, TILA's private right of action applies only

to actions against "creditors." 15 U.S.C. § 1604(a). TILA defines a "creditor" as ". . . the person to whom the debt arising from the consumer credit transaction is initially payable." 15 U.S.C. § 1602(g).

Carrington is not a creditor within TILA's purview. Embry's complaint unequivocally states that Taylor, not Carrington, was the original lender, and that the loan originated on March 12, 2007. (*See* Doc. 28, p. 2; Doc. 57, pp. 2–3; Doc. 57, pp. 10–13). Because Carrington is not the original lender, Carrington is not subject to TILA liability. *See Jackson v. Bank of New York Mellon*, 2016 WL 4942085, at *12 (S.D. Ala. July 19, 2016) (dismissing TILA claim against mortgage servicer because mortgage servicer "was not the original lender on Plaintiffs' Mortgage and/or Note").

Embry cites *Kahn v. Bank of New York Mellon*, in which a court addressed the issue of vicarious liability with regard to TILA, and held that a creditor was liable for its servicer's § 1641(f)(2) violation. *See Kahn v. Bank of New York Mellon*, 849 F. Supp. 2d 1377 (S.D. Fla. 2012). But Embry has not asserted a TILA claim against a *creditor* for the actions of a *servicer*. Instead, Embry has only asserted a TILA violation against Carrington (the servicer) and has failed to offer any alternative theory under which a servicer, alone, is liable for TILA violations. Embry has also not offered any other reasoning by which Carrington could be defined as a "creditor" such that it would be subject to liability under TILA. Accordingly, Embry has not met her burden to sustain a cause of action against Carrington for a TILA violation because Carrington is not a creditor. *See Jackson v. Bank of Mellon*, 2016 WL 4942085, at *12 (S.D. Ala. July 19, 2016).

For these reasons, the court will **GRANT** Defendants' motion for summary judgment on Count 8.

## F. RESPA (against Carrington only, Count 9)

In Count 9, Embry alleges violations of the Real Estate Settlement Procedures Act (RESPA) against Carrington. Specifically, Embry alleges that Carrington violated RESPA by failing to acknowledge or respond to Embry's Qualified Written Request ("QWR") within the time provided by federal law.

In her complaint, Embry alleges that she made a QWR and Notice of Errors pursuant to RESPA on February 18, 2020, April 16, 2021, June 11,

2021, and September 29, 2021, which were sent by first class mail. (*See* Doc. 28, pp. 23–24).[4] But Embry did not attach the purported QWRs to her Amended Complaint (doc. 28), and the Amended Complaint does not allege the content of the alleged QWRs.

Courts in the Eleventh Circuit have held that the failure to attach or described alleged QWRs is fatal to a RESPA claim. *See, e.g.*, *Zanaty v. Wells Fargo Bank, N.A.*, 2016 WL 6610443, at *9 (N.D. Ala. Nov. 9, 2016) (agreeing with other courts that a plaintiff must "substantiate the validity of a QWR's contents as a part of his complaint"); *Patrick v. CitiFinancial Corp.*, 2015 WL 3988860, at *3–4 (M.D. Ala. June 30, 2015) (dismissing RESPA claims where plaintiff failed to allege content of QWR); *Tallent v. BAC Home* Loans, 2013 WL 2249107, at *3 (N.D. Ala. May 21, 2013) (requiring a showing that the QWR was in writing, included the name and account of the borrower, and included a statement of the reasons for the belief that the account is in error or provides sufficient detail regarding the information sought); *Malally v. BAC Home Loan Servicing, LLC*, 2010 WL 5140626, at *8 (N.D. Ga. 2010). "Courts have concluded that if plaintiffs do not attach a QWR to the complaint, they should plead facts which show that their written request included the information required by 12 U.S.C. § 2605(e)(1)(B)." *Patrick v. CitiFinancial Corp.*, 2015 WL 3988860, at *3 (M.D. Ala. June 30, 2015) (citing *Tallent v. BAC Home Loans*, 2013 WL 2249107, at *3 (N.D. Ala. May 21, 2013)).

Because Embry did not attach the purported QWRs, or specify the alleged content of the QRS, the court will **GRANT** Defendant's motion for summary judgment on Count 9.

## G. Fair Credit Reporting Act (against Carrington only, Count 11)

In Count 11, Embry alleges that Carrington violated the Fair Credit Reporting Act ("FCRA") by reporting false and inaccurate information about Embry, and later failing to retract it. Specifically, Embry asserts that

---

[4] Embry's brief in opposition states that Embry "testified that she sent the defendants a QWR by mail, and that she sent a copy to the Defendant's attorney, LOGS," but the brief offers no citation. (*See* Doc. 80, p. 43). The portions of Embry's deposition submitted to this court do not include testimony about QWRs. The alleged QWRs are discussed in Embry's affidavit (*see* doc. 79), but the affidavit does not the specify the content of the alleged QWRs.

Carrington inaccurately reported that Embry was delinquent in her mortgage loan and in default.

"The FCRA imposes two separate duties on furnishers. First, [15 U.S.C.] § 1681s-2(a) requires furnishers to submit accurate information to [credit reporting agencies]. Second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of [consumer] disputes." *Green v. RBS Nat'l Bank*, 288 F. App'x. 641, 642 (11th Cir. 2008).

Defendants argue that Embry's FCRA claim should be dismissed because Embry offers no evidence that Carrington reported inaccurate or incomplete information. In her brief in opposition, Embry responds that her claim must survive because "[Defendants] have again failed to direct the Court to any portion of the record that either negates tender or reflects that the plaintiff cannot produce evidence of tender." (Doc. 80, pp. 47–48).

Embry again misunderstands the summary judgment standards. The undisputed facts before this court confirm that Embry was in default because she failed to make payments on her loan for three years. (*See* Doc. 57, p. 4; Doc. 57, pp. 40–46; Doc, 67, pp. 13–15; Doc. 67, p. 53). When the moving party shows the court that there is "an absence of evidence to support the nonmoving party's case," the burden shifts to the non-moving party to designate specific facts showing that there is a genuine dispute of material fact. *Celotex*, 477 U.S. at 324–25.

Embry cites *no* evidence for the proposition that she was *not* in default. To be sure, Embry *alleges* that she was not in default—but at the summary judgment stage, Embry needs at least *some* evidence to substantiate her allegations. *See Rice v. Seterus, Inc.*, 2018 WL 513345, at *12 (N.D. Ala. Jan. 23, 2018) (holding FCRA claim was due to be dismissed because ". . . Plaintiff's Amended Complaint offers nothing more than conclusory allegations that the credit bureaus notified Chase and Seterus about Plaintiff's disputes.").

And even if Embry proffered evidence to create a genuine dispute of material fact, Embry's FCRA claim is barred by the statute of limitations. "Under 15 U.S.C. § 1681p, an action is timely if filed within two years from the date on which the liability arose or within two years from the plaintiff's discovery" of a violation. *Nelson v. Am. Express Travel Related Servs., Inc.*,

2011 WL 13254100 (citing *Clay v. Equifax, Inc.*, 762 F.2d 952 (11th Cir. 1985)). The clock begins to run on the date the allegedly erroneous information is transmitted by the credit agency to a potential user. *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007). Embry claims she repeatedly disputed the account and the allegedly false credit reporting, beginning with Chase in December 2018, and that she disputed it again with Carrington in November 2019. But Embry did not file her FCRA claim against Carrington until December 6, 2021. Thus, even if a violation was committed between December 2018 and November 2019, the FCRA's two-year statute of limitation bars Embry from pursuing a claim related to these violations. *See Rodriguez v. Gen. Info. Servs.*, 2019 WL 691403, at *2 n.2 (N.D. Ala. Feb. 19, 2019). For this separate and additional reason, Embry's FCRA claim fails.

Thus, the court will **GRANT** Defendants' motion for summary judgment on Count 11.

## H. Fair Debt Collection Practices Act (against Carrington only, Count 12)

In Count 12, Embry alleges violations of the Fair Debt Collection Practices Act ("FDCPA") by Carrington.

"To state a claim under the FDCPA, a plaintiff must establish, among other things, that the defendant is a "debt collector." *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1248 (N.D. Ala. 2013) (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 648 F.3d 1211, 1216 (11th Cir. 2012). The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). 15 U.S.C. § 1692a(6)(F) excludes from the definition of "debt collector" any person "collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."

The Eleventh Circuit has explicitly held that "an enforcer of a security interest, such as a [mortgage company] foreclosing on real property . . . falls outside the ambit of the FDCPA." *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460–61 (11th Cir. 2009) (per curiam) (collecting cases with

17

same holding); *see also Beadle v. Haughey*, 2005 WL 300060, at \*3 (D.N.H. February 9, 2005) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA.").

Defendants briefly argue that Carrington is not a debt collector, and therefore, the FDCPA doe snot apply to it. But even if Carrington is subject to the FDCPA, Embry's claim fails for another reason: the undisputed evidence before this court confirms that Carrington has not violated the FDCPA.

Under § 1692f(6), a debt collector is prohibited from threatening a non-judicial foreclosure if there is no enforceable security interest, no present intention to take possession of the property, or if the property is exempt. *See* 15 U.S.C. § 1692f(6). But Defendants have produced undisputed evidence that Embry's debt was in default, that Wilmington had the right to foreclose, and that Carrington acted lawfully as its servicer. Wilmington has owned and held Embry's note, is indorsed in blank, and has been the assignee of Embry's mortgage since it acquired the loan from Chase.

In Alabama, the party who possesses a note indorsed in blank has an absolute right to foreclose on the secured property. *Thomas v. Wells Fargo Bank, N.A.*, 116 So. 3d 226, 229 (Ala. Civ. App. 2012). A party in possession of a note indorsed in blank, like Wilmington, can foreclose on secured property even if it has not been assigned the mortgage. *Id.* at 233. As Wilmington's duly-appointed servicer, Carrington was authorized to act on Wilmington's behalf to enforce the terms of Embry's note and mortgage. And Wilmington was also the assignee of Embry's mortgage. This status as assignee gave it the right to foreclose. Embry presents *no* evidence of an FDCPA violation.

Thus, the court will **GRANT** Defendants' motion for summary judgment on Count 12.

## I. Declaratory or Injunctive Relief (Count 13)

In Count 13, Embry seeks the following declaratory relief:

> 1. An Order declaring that she is not in default of her mortgage agreement and declaring the notice of default is null and void;

    2.  An order declaring that Defendants have no right or authority to foreclose on Embry's property; and

    3.  An Order prohibiting Defendants from foreclosing on Embry's property.

(Doc. 28, p. 35).

But as explained above, the undisputed facts before this court confirm that Embry was in default because she failed to make payments on her loan for three years. (*See* Doc. 57, p. 4; Doc. 57, pp. 40–46; Doc, 67, pp. 13–15; Doc. 67, p. 53). Embry proffers no evidence to substantiate her allegations to the contrary. Embry is not entitled to the declaratory relief she seeks.

The court will **GRANT** Defendants' motion for summary judgment on Count 13.

## J. Wilmington's Claims for Declaratory Judgment, Breach of Contract, and Judicial Foreclosure (Counterclaims)

In its answer to Embry's amended complaint, Wilmington asserted counterclaims. (*See* Doc. 36). Wilmington asks the court to enter an order granting it a final summary judgment on its claims for declaratory judgment, breach of contract, and foreclosure.

Embry does not offer any briefing on these issues. Generally, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (citation omitted).

Based on the evidence presented in this case, and for the reasons explained above, the court finds that Wilmington is the holder of Embry's note, and Wilmington is entitled to enforce the terms of Embry's note and mortgage. The court also finds that Embry has breached the terms of her note and mortgage. Thus, Wilmington is entitled to foreclose in accordance with Embry's note and mortgage and applicable law.

The court will **GRANT** Wilmington's motion for summary judgment on its claims for declaratory judgment, breach of contract, and judicial foreclosure.

## IV.    CONCLUSION

For the reasons explained above, the court will **GRANT** Defendants' motion to strike, and **GRANT** Defendants' motion for summary judgment on Counts 1 and 2 (unjust enrichment), Counts 3 and 4 (breach of contract), Counts 6 and 7 (defamation, libel, and slander), Count 8 (TILA), Count 9 (RESPA), Count 11 (FCRA), Count 12 (FDCPA), and Count 13 (declaratory relief). The court will also **GRANT** Wilmington's motion for summary judgment on its counterclaims for declaratory judgment, breach of contract, and judicial foreclosure. The court will enter a separate order that carries out this ruling.

**DONE** on June 13, 2023.


**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE